CHITTENDEN,
*January,*
1838.

ENOS BLIN *v.* MAYO & FOLLETT.

A wharfinger is liable only for ordinary diligence.

A charge for wharfage, if made from a shipping list, and not from an inspection of the goods, is not conclusive evidence that the goods were received by the wharfinger.

A delivery of goods on a wharf is not necessarily a delivery to the wharfinger.

Evidence of usage is proper to show when goods, landed on a wharf, are to be considered as in the custody of the wharfinger.

THE plaintiff declared against the defendants in two counts;— 1st. Trover, for two barrels of flour. Second count, alleging that defendants, as wharfingers, received 100 barrels, of flour, belonging to the plaintiff, and, disregarding their duty as such wharfingers, did not deliver the whole of said flour to the plaintiff, but lost two barrels of it.

Plea—Not guilty ; and issue to the country.

On the trial in the County Court, the plaintiff offered evidence tending to prove that, on the third of December 1833, the commander of the Steam Boat Franklin landed 100 barrels of flour, belonging to the plaintiff, on the defendants' wharf in Burlington, together with some other 100 barrels, belonging, or consigned, to the defendant ; that the flour belonging to the plaintiff was put upon the wharf by itself ; that the plaintiff, who resided in Burlington, called the same morning to take his flour away, and on the same day took away 98 barrels, which were all that could be found. It further appeared that the defendants were owners of the wharf, that when the plaintiff called for his flour, men in the defendants' employ were rolling flour into the defendants' store house, and that a portion of plaintiff's flour was intermixed with the flour that the defendants were putting into the store house. There was no evidence that any other person had been on the wharf, from the time the flour was landed, to the time when the plaintiff took his flour away, except the defendants and their servants.

The defendants offered evidence tending to prove, that it was customary with the merchants of Burlington, to receive their goods on the wharf, and not have them put into the store house ; that they took charge of them themselves immediately upon their being landed, and usually took them away the same day, but if there was a probability of their being damaged

by remaining exposed to the weather, or if they were consid- CHITTENDEN, January, ered unsafe on the wharf, it was customary, if the owner did 1838. not come and take charge of them, to put them into the store house, and that the charge for wharfage was made from the shipping list, when the owner did not store his goods.

Blin<br>v.<br>Mayo &<br>Follett.

The plaintiff also offered an account rendered by the defendants to the plaintiff, in which the defendants had charged the plaintiff the wharfage of the 100 barrels of flour.

The defendants offered no evidence to show what had become of the two barrels, that were not found.

The plaintiff requested the court below to charge the jury;—

1. That the defendants' liability, as wharfingers, was the same as the liability of common carriers.

2. That if not subject to the same liability, still, they were bound to exercise ordinary diligence in taking charge of property, landed on their wharf, and if the jury should find that the flour was lost, by reason of defendants not using ordinary diligence, the plaintiff must recover.

3. That if the jury were satisfied that the flour was landed on the wharf, the defendants were bound to show what became of it, and, in the absence of such showing, they might presume a conversion of it by the defendants.

But the Court charged the jury, that if the 100 barrels were landed on the defendants' wharf, and they were satisfied that the two barrels missing were taken into the defendants' store house, with other flour, or had, in any way, gone into their possession, and had been by them disposed of, and not returned to the plaintiff, the plaintiff was entitled to recover upon the count in trover; but if the flour had been converted by the defendants, they would be liable for the flour upon the second count, provided it came into their care and possession, as wharfingers; but if the jury found the custom to be, for the merchants of Burlington to receive their goods and take charge of them immediately upon their being landed, without communicating with the wharfingers, paying for the use of the wharf, merely, and that the plaintiff did, in this instance, so come with his agents to take charge of the flour, they could not legally consider it as in the charge or custody of the defendants, as wharfingers, and the defendants would not be liable for its loss.

As to the defendants' account, charging the wharfage of

CHITTENDEN, 100 barrels, it would be strong evidence against the defend-
January,
1838.    ants, if the jury were satisfied that it was made upon an in-
―――――――  spection of the goods ; but, if taken from the shipping list,
  Blin
   v.    it would add nothing to the evidence of that list, and the
Mayo &   testimony of witnesses on the stand.
Follett.
            The jury returned a verdict for the defendants.

To the foregoing charge the plaintiff excepted.

*J. Maeck*, for plaintiff.

1. As to the count in trover, the charge was erroneous.
The Court charged that the jury must not only find that the
property came into defendants' possession, and that they had
refused to deliver it on demand, but had actually converted
it. On an unqualified refusal to deliver, the jury would have
been warranted in finding a conversion.

2. As the property came into defendants' possession, as
wharfingers, they were responsible for its loss; or, at all
events, were bound to show what became of it. The whar-
finger's liability seems to be the same as that of a common
carrier. *Ross* v. *Johnson*, 5 Bur. 2825. Wheaton's Sel.
Vol. 1, 334. *Maving* v. *Todd*, 2 C. L. R. 301.

The public repose the same confidence in a wharfinger,
as in a common carrier; his power over the property, to de-
tain for charges, is precisely the same; and it is not disco-
vered why his responsibility should not be the same.

The charge, as to the effect of the custom of merchants
in Burlington, was unwarranted by the evidence, and incor-
rect in point of law.

1. The case shows no evidence of any such custom.

2. A custom of that kind, among the merchants of Bur-
lington, generally, would be insufficient. Nothing short of
express notice to plaintiff, of such a custom, or, perhaps, tes-
timony to show that the plaintiff had assented to the custom,
would be binding on him, provided the law imposes on the
defendants the liability we have supposed, or any distinct
liability.

Time and usage are essential to the existence and validity
of a custom. Coke on Litt. 110, 113. 1 Bac. Abr. 670.
T. Jones, 144. 1 Black. Com. 68, 9. 2 T. R. 758. When
a custom destroys a right, or estate, it is subject to a strict con-
struction. Cro. Eliz. 870. 3 Mod. R. 234.

*C. Adams*, for plaintiff.

The rule is well settled, that in order to charge bailees,

there must be negligence or want of care.  Common carriers
and inn-keepers are the only exception to the rule.

The liability of common carriers rests on grounds of public
policy.  They are considered as *insurers*, and the liability is
independent of the contract.   *Coggs* v. *Bernard*, Ld. Ray-
mond's R. 909.   *Forward* v. *Pittard.* 1 T. R. 27.  *Garside*
v. *Trent & Mersey Navigation Co.*  4 T. R. 581.   *Hyde* v.
*Same.*   5 T. R. 389.

Wharfingers and ware-house men are within the rule, but
not within the exception.   *Platt* v. *Hibbard*, 7 Cowen, 497.
*Ashley* v. *Kellogg.* 8 Cowen, 228.  *Roberts* v. *Turner*, 12
Johns. 232.  *Matter of Webb and Others.* 8 Taunt. 443.

The verdict is decisive, that the possession of the flour re-
mained in the plaintiff, and was not transferred to the de-
fendants.   The bare landing of goods on the wharf creates
no liability.   There must be a delivery to the wharfinger, to
create any liability on his part, as bailee of the goods.   Story
on Bailment, 289, 293, 5, 6.  *Buckman* v. *Levi*, 3 Camp.
R. 414.

A wharf is in the nature of a private way, for the use of
which the owner may demand compensation, but the landing
of goods on the wharf is not, necessarily, a delivery of them
to the wharfinger.   There can be no liability, as bailee, with-
out a delivery of the goods, and, without such delivery, the
wharfinger would be no more liable than the owner of a toll-
bridge.

The charge of the court was incorrect in one point, but as
the plaintiff cannot complain of it, but little time need be
spent in its examination.  A delivery to the wharfinger,
throws upon him the duty of proper care, and, for want of
such care, he may be made liable as all other bailees are, but
not otherwise.   In the case of the destruction of goods, the
plaintiff must show want of care, as was done in the case of
*Platt* v. *Hibbard*, but, in the case of a loss, the wharfinger
must show the exercise of proper care.

The opinion of the court was delivered by

WILLIAMS, C. J.—The charge of the Court below, on the
first count, has been objected to, because the Court told the
Jury, that if the goods had been disposed of by the defend-
ants, and not returned, the plaintiff would be entitled to re-
cover, and it is said, that in either case, the verdict should have

CHITTENDEN,
January,
1838.

Blin
v.
Mayo &
Follett.

been for him. The charge, however, is, in effect, that the Jury must find a conversion. The latter expression, in relation to not returning, was probably redundant, as the flour, if it had been converted and disposed of by the defendants, was not returned. A demand and refusal is only evidence of a conversion. If the Jury had been instructed that the plaintiff was entitled to recover, on the ground that the defendants had not 'returned the goods to the plaintiff, it would have been erroneous. As a demand is found in the case, the charge was undoubtedly correct.

On the second count, the charge was, in substance, as contended for by the plaintiff; that, if the flour came into their possession, as wharfingers, they were liable therefor. It may well be doubted, whether the duty of a wharfinger is as severe as has been contended for. The expression of Lord Mansfield in *Ross* v. *Johnson*, 5 Bur. 2827, and of Lord Ellenborough in *Maving* v. *Todd*, 1 Starkie R. 72, countenances the idea, that their liability is the same as common carriers. This opinion is ably combatted by Judge Story, in his commentaries on bailments, and by the Reporter, in a note to the case of *Platt* v. *Hibbard*, 7 Cowen, 502. Wharfingers frequently combine the character of wharfingers, warehouse-men, and common carriers. In the case of *Maving* v. *Todd*, the defendants were lighter-men, as well as wharfingers, and in the former character, they were common carriers, and probably, were liable as such, in that case. The expression of Lord Ellenborough may have had reference to them as lighter-men. The liability of a wharfinger is, probably, like that of a warehouse-man, who is responsible alone for a want of ordinary diligence, and not like that of a common carrier, who is liable for all losses, except such as happen by the act of God, or the public enemies. Whatever may be the liability of wharfingers, it was clearly necessary to establish the fact, that, as such, the flour in question came into their possession. The charge for wharfage, if made from the shipping list, and not from inspection, was not evidence sufficient to prove that fact. A mere delivery of goods at the wharf, is not, necessarily, a delivery to the owners, as wharfingers. This was holden in the case of *Buckman* v. *Levi*, 3 Camp. 414, and *Gibson* v. *Ingles*, 4 Camp. 72. The usages of business, in the vicinity, are of importance to shew when a

wharfinger acquires, and when he ceases to have, the custody of goods in that capacity, as in the case of common carriers. The cases are numerous where evidence, as to the usages of business, is received to shew when goods are considered as delivered to, and received by, common carriers, and when their liability commences. The same evidence is also received to determine the question of ordinary diligence. The same acts in one place, where the usages are conformable thereto, would be considered as evidence of great negligence, and in another, as evidence of ordinary care and prudence. By the usages and customs of business is not understood to be meant such customs, as, from their long continuance, have become part of the common law, but such customs, and usages as are generally regarded and adopted by the persons doing business in the vicinity, and with reference to which contracts are made. The evidence of the customs and usages of the merchants, in the vicinity of the defendant's wharf, was properly received to shew that goods, landed on the wharf, (as was the flour in this case) were not considered as in their custody, and that they do not receive and take care of them, as wharfingers. The goods were *in transitu* from the ship to the custody of the plaintiff, and he, undoubtedly, was aware of the usage, as he called for the flour the same morning it was landed. The jury have found that the flour was not received by, nor into the custody of, the defendants, as wharfingers, and these were facts for them to find. We see no error in the charge, of which the plaintiff can complain.

The Judgment of the County Court is, therefore, affirmed.