<hr />

### FARMERS' & MECHANICS' BANK *v.* CHAMPLAIN TRANSPORTATION COMPANY.

Where the defendants, who were common carriers on Lake Champlain, were intrusted with a package of bank bills to carry from Burlington to Plattsburgh, which was directed to the cashier of the bank at Plattsburgh, and delivered the same to the wharfinger of the wharf, at Plattsburgh, at which their boat touched, from whom the package was stolen, it was held, in an action brought by the consignors against them for the value of such package, that it was competent for the defendants to prove that it was their uniform usage to deliver such packages of money, when intrusted to them, to the wharfinger having the care of the wharf where the boat landed, without giving any notice to the consignee, and that this was well known to the plaintiffs.

Evidence of the usage of business in the vicinity may be received to show when the liability of common carriers ceases, as well as when it commenced. WILLIAMS, Ch. J.

TRESPASS ON THE CASE against the defendants, as common carriers of goods, &c., from Burlington to Plattsburgh, N. Y. The declaration alleged that the plaintiffs delivered to the defendants, and the defendants accepted, a package of bank bills, amounting to $1109, directed to Richard Yates, Esq., cashier of the Clinton Co.

Bank at Plattsburgh, " to be safely and securely carried and conveyed by the said defendants from Burlington aforesaid to Plattsburgh aforesaid, and then, to wit at said Plattsburgh, safely and securely to be delivered to said Richard Yates, Esq., cashier ;" but that the package was never delivered as directed, but, through the negligence and carelessness of the defendants, was lost. Plea, the general issue, and trial by jury.

It appeared, on trial, that the package in question was delivered by the teller of the plaintiffs' bank to the captain of the defendants' ferry boat, June 5, 1839, and that, when the boat arrived at Plattsburgh, the captain delivered the package to one Ladd, the wharfinger, to carry to the bank,—but that, while in Ladd's possession, it was stolen, and never reached the bank. As to whether there was any particular understanding, or agreement, between the teller and the captain, that the latter should deliver the package to Yates, or at the bank in Plattsburgh, the testimony was contradictory.

It was conceded that the defendants' boat, at that time and during the season, was engaged in transporting goods, &c., from Burlington to St. Albans, touching at Port Kent and Plattsburgh only long enough to discharge and receive freight and passengers. The court having intimated to the counsel that they should charge the jury that, though the defendants might be common carriers of ordinary goods, &c., yet it was not to be taken *prima facie* that they were common carriers of bank bills, the plaintiffs introduced evidence tending to prove that the defendants, prior to and until the time of the delivery of the package in question, had not only held themselves out to the public as common carriers of bank bills, as well as of ordinary goods, &c., without distinction, but had in fact become such by their course of business.

The defendants thereupon offered to prove,—which had been before offered by them and excluded by the court,—that it had ever been the constant, uniform, and unvaried usage and custom of all the boats belonging to the defendants, and of all the masters and officers thereof, and particularly of this ferry boat, when they received packages of money, like the one in question, to carry to any place on the lake, and particularly to the Bank at Plattsburgh, to deliver them to the wharfinger, for him to carry to the bank,—as was

done in this case,—and not to the consignee, and this without giving any notice to the consignee;—and that this uniform custom was well known to the cashier of the plaintiffs' bank, and to Dr. Peck,—president and a director of said Bank,—at the time of the delivery of said package. This was objected to by the plaintiffs, and excluded by the court. Exceptions by the defendants.

The jury returned a verdict for the plaintiffs.

*C. Adams* and *D. A. Smalley* for defendants.

The plaintiffs count upon a special undertaking to deliver the package to Richard Yates at the Plattsburgh Bank. Upon this point the testimony was contradictory; and how the fact was found does not appear, nor whether that question was submitted to the jury. It was competent for the parties to have made such special contract, and, on proof of it, the plaintiffs might have recovered; but in that event the general liability of common carriers would not have been drawn in question. *Garside* v. *Nav. Co.*, 4 T. R. 581. *Hyde* v. *Nav. Co.*, 5 Ib. 389. *Golding* v. *Manning*, 2 Bl. R. 916. *Ashley* v. *Cooper*, 8 Cowen 223. *St. John* v. *Van Santvoord*, 25 Wend. 660.

The case, apparently, was put upon the ground that such contract was unimportant, and that the ordinary duty of carriers involved the same duty. But the defendants, as carriers by water, would not necessarily be carriers beyond the wharf at Plattsburgh; and, if there was any undertaking to carry beyond the wharf, it must be proved by an express contract to that effect, or implied from the general course of business, or the particular usage which had obtained between these parties. *Platt* v. *Hibbard*, 7 Cow. 497. The undertaking of carriers of *goods* generally is satisfied by a delivery of the articles at the usual wharf at the port of delivery. *Chickering* v. *Fowler*, 4 Pick. 371. Abbott on Shipping 33. In this case, then, the plaintiffs must show a distinction between the liability of carriers of goods generally, and carriers of packages of bills. Carriers may, it is true, extend their business to carrying packages of bills; but it is at their election whether they will do so. Story on Bailments 300, 301, 328. *Sewall* v. *Allen*, 6 Wend. 335.

Whether carrying packages of bills came within the defendants'

Farmers' & Mechanics' Bank *v.* Champlain Trans. Co.

ordinary business was matter of evidence. The plaintiffs had a right to prove "that the defendants had become carriers of bills, as well as of ordinary goods and merchandize;" and this right in the plaintiffs involves a corresponding right in the defendants to introduce evidence to rebut it. *Sewall* v. *Allen*, 6 Wend. 335. The defendants, then, should have been permitted to prove their uniform custom relative to the delivery of packages at the wharf to the wharfinger without notice to the consignee, and the knowledge of the plaintiffs of the existence of this uniform custom. *Gibson* v. *Culver*, 17 Wend. 305. *Ostrander* v. *Brown*, 15 Johns, 39. Story on Bailments, 345, 346. *Rushforth* v. *Hadfield*, 7 East 224. *Cole* v. *Goodwin*, 19 Wend. 251. *Garside* v. *Nav. Co.*, 4 T. R. 582. *Hyde* v. *Nav. Co.*, 5 T. R. 390. *St. John* v. *Van Santvoord*, 25 Wend. 660. *Blin* v. *Mayo et al.*, 10 Vt. 56. 2 Kent's Com. 604, 605. Story on Bail. 343–6, 352–6. *Sewall* v. *Allen*, 6 Wend. 335.

*C. D. Kasson* for plaintiffs.

1. The case shows that the jury found,—1. That the defendants were common carriers,—2. That they were common carriers of *this species of property*,—3. That they received the package in question as common carriers, and that the captain, in receiving the package, acted *as* captain and agent for and in behalf of the defendants.

The duties of a common carrier are such as are affixed to his vocation *by law*, and do not result from the *contract*. The *delivery* by the consignor and *acceptance* by the carrier are all that is necessary; the *law* then steps in and helps out the contract by adding thereto the duty of *transport* and *delivery to the consignee*. *Lane* v. *Cotton*, 1 Salk. 143. *S. C.*, 1 Ld. Raym. 649, *per* POWYS, J., and 652, *per* LD. HOLT. *Coggs* v. *Bernard*, 2 Ld. Raym 918. *Upshare* v. *Aidee*, Com. R. 25. *Gosling* v. *Higgings*, 1 Camp. 451. *Forward* v. *Pittard*, 1 T. R. 33. *Riley* v. *Horne*, 15 E. C. L. 426.

The *duty* is not confined to the mere *carrying*, but extends also to a *delivery to the consignee*, or a delivery at some proper place with *notice to the consignee*. *Rich* v. *Kneeland*, Cro. Jac. 330. *Per* LD. HOLT in *Lane* v. *Cotton*, 1 Ld. Raym. 652. *Taylor* v. —— 2 Ld. Raym. 792. *Brown* v. *Hodgson*, 4 Taunt. 189.

*Hyde* v. *Trent. Nav. Co.,* 5 T. R. 390. *In re Webb et al.,* 4 E. C. L. 159. Story on Bailments, 345–7. *Hatchwell* v. *Cooke,* 1 E. C. L. 488. *Budenham* v. *Bennett,* 4 Price 31, cited in *Duff* v. *Budd,* 7 E. C. L., 402. *Griffith* v. *Lee,* 11 E. C. L. 334. *Orange Bank* v. *Brown,* 3 Wend. 161. *De Mott* v. *Laraway* 14 Wend. 226. *Elliott* v. *Rossel,* 10 Johns. 1. *Ostrander* v. *Brown,* 15 Johns. 39. *Hollister* v. *Newlan,* 19 Wend 239. *Bowman* v. *Teall,* 23 Wend. 306. *St. John* v. *Van Santvoord,* 25 Wend. 660. *Per* Verplank, Sen., in *Powell* v. *Myers,* 26 Wend. 596. *Sewall* v. *Allen,* 6 Wend. 335

2. The *duty* being to carry and deliver, we contend : — 1. That the defendants cannot restrain it by any implied contract or particular usage; and 2. That they have not so done in this case. The case shows that the package was at least *delivered* to the defendants, and by them *accepted* as carriers. This is sufficient to constitute the necessary *contract,* and *ipso facto* devolves upon the carriers the *duty* of *transport* and *delivery.* *Rich* v. *Kneeland,* Cro. Jac. 330. *Per* Ld. Holt in 1 Ld. Raym. 652. *Taylor* v. ———, 2 Ld. Raym. 792. *Tichburne* v. *White,* Str. 145. *Stuart* v. *Crawley,* 3 E. C.L. 365. *Orange Bank* v. *Brown,* 3 Wend. 161. *Hollister* v. *Newlan,* 19 Wend. 239. *Camden & Amboy R. R. Co.* v. *Belknap,* 21 Wend.354. *St. John* v. *Van Santvoord,* 25 Wend. 660.

3. The case further shows that the parcel was directed to " Richard Yates, Esq., Cashier, Plattsburgh, N. Y." The carrier must deliver according to the *direction ;* and, when no direction is given except the address upon the parcel, *that* is his " direction." *Rich* v. *Kneeland,* Cro. Jac. 330. *Taylor* v. ———, 2 Ld. Raym. 792. *Hatchwell* v. *Cooke,* 1 E. C. L. 488. *Birkett* v. *Willan,* 2 B. &. Ald. 356. *Stephenson* v. *Hart,* 15 E. C. L. 47, and *St. John* v. *Van Santvoord,* 25 Wend. 596, where the case was identical with this, on this point.

4. The case admits that the boat ran to Plattsburgh, and that the direction of the parcel was *at* Plattsburgh. The term " Plattsburgh," to which the defendants were common carriers, is *nomen collectivum,* and extends at least to the *whole port,* or village, or settlement at, on, about, or near the landing. *Birkett* v. *Willan,* 2 B.

& A. 356. *Beckford* v. *Crutwell,* 24 E. C. L. 300. *Ostrander* v. *Brown,* 15 Johns. 39.

5. The usage, which the defendants offered to show, was inadmissible, as contravening the *general law* of the land. *Upshare* v. *Aidee,* Com. R. 25. *Oppenheim* v. *Russell,* 3 B. & P. 45. *Ostrander* v. *Brown,* 15 Johns. 39. *Bryant et al.* v. *Com. Ins. Co.,* 6 Pick. 145. *Eager* v. *Atlas Ins. Co.,* 14 Pick. 141. *Crosby* v. *Fitch,* 12 Conn. 410. *Cole* v. *Goodwin,* 19 Wend. 239. *Clark* v. *Farton,* 21 Wend. 152. *Gould* v. *Hill,* 2 Hill's Rep. 624, citing opinion of STORY, J., in case of *The Schooner Reeside,* 2 Sumner 567. We do not deny that usage is admissible in some cases arising under the law merchant,—usages of trade to determine the liability of underwriters, on questions of *deviation,* &c., &c. ; but it will be observed that in these cases the *law itself* is based upon particular usages in particular places, or in particular trades.

6. We claim that if it be permitted to make an interpolation into the common law by local usage, this usage does not attain to that dignity. We are aware that in some few instances courts have held that the *general course* or *usage* of trade in a given port will govern the mode of fulfilling the obligations imposed by law upon carriers. But, on the fullest examination of all the cases, not one is to be found where, even in the *obiter dicta* of the judges, they have ever allowed that the mere usage of the *particular carrier himself* would be sufficient to subvert the law of the land, or in any wise affect his liability, excepting the case of *Gibson* v. *Culver,* 17 Wend. 305. That was a case of a *mail coach,* and COWEN, J., who delivered the opinion, lays stress on *that fact.* But all the cases on which that opinion is based are mere *obiter dicta* of the judges, or cases of a general, uniform, notorious local custom *of the place* or *of trade.* But that case has been substantially overruled by the same court in *Holisted* v. *Nowlen,* 19 Wend. 239. *Cole* v. *Goodwin,* 19 Wend. 251. *Clark* v. *Farton,* 21 Wend. 153. *Bowman* v. *Teall,* 23 Wend. 306. *St. John* v. *Van Santvoord,* 25 Wend. 660. *Gould* v. *Hill,* 2 Hill 624. It is moreover in direct hostility to the whole course of English decisions, and the former decisions in New York, *Ostrander* v. *Brown,* and many other cases. It conflicts with Judge Story in the case of the *Schooner Reeside,* 2 Sum-

8

ner 567, cited in 2 Hill 624, and finds no warrant in Ld. Kenyon's speculations in *Hyde* v. *Trent Nav. Co.*, 5 T. R. 390, in which the other judges differed from him : for he only doubted as to the effect of the *general usage of trade*, or of *the place.*

In *Gatliffe* v. *Bourne*, 33 E. C. L. 372, an attempt was made to raise the question made in this case, but it failed on demurrer to special pleas ; and it is well remarked by BRONSON, Ch. J., in *Hollister* v. *Nowlen*, ( 19 Wend. 239,) that the doctrine, if it ever existed in England, is long since exploded. If such an usage can discharge the carrier, then, as was well said by BRONSON, Ch. J., in *Cole* v. *Goodwin*, " a usage of *mere neglect* " may be interposed to justify him.

7. But the usage, offered to be shown, is *no usage.* The offer was to show that the captain was in the habit of delivering to Ladd, " for him to carry to the bank." Ladd, then, acted as *agent for the boat.* Neither the consignees nor the plaintiffs ever employed .him, but the captain did. It is a mere offer to show that the defendants have *used* a course of negligence in delivering goods, or else to show in what manner they have hitherto done, or procured to be done, *their own business,*

The opinion of the court was delivered by

WILLIAMS, Ch. J. This case has been elaborately argued, but I apprehend it does not involve an investigation of all the law and learning bestowed upon it. The first question, as to the interest of Mr. Warner, the cashier, it is not necessary to decide, as the case is to be sent for another trial on another point,—and it is in the power of the plaintiffs to remove all questions on this subject, by executing to Mr. Warner a release of all claims on him arising out of this transaction. The court are of opinion, on the other questions raised, that the evidence, tending to prove custom and usage, and the knowledge of the plaintiffs, should have been admitted.

Whoever hold themselves out to the world as common carriers, must do all required of them, as such, by law, and may not refuse in particular instances, without sufficient cause. Hence, when the defendants held themselves out as common carriers of goods or money from Burlington to Plattsburgh, or elsewhere, they assumed

all the duty and responsibility attached to them in that character. It becomes therefore important to them, as well as community generally, to ascertain what are those duties, and how far they can be modified by contract, usage of business, or their particular usage. No one seems disposed to question but that they were responsible for the safe keeping of money, or goods, from the time they received them, until they delivered them at the place of their destination, notwithstanding the loss may have happened, without any fault on their part. And if the law is as strict and unbending as the counsel for the plaintiffs contend, no proprietors of steamboats, rail ways, or stages, could with safety or propriety become common carriers. Nor if it be their duty, from which they cannot exempt themselves, to deliver every package or parcel, entrusted to their care, to the individuals to whom they may be directed. The boats do not stop at the different landing places long enough to deliver to every individual in that town the parcel directed to him. Rail road cars cannot deviate from their track, nor stages go to the house of every individual on their route, and of course they must employ responsible agents to perform that, which they cannot do themselves. I apprehend, however, that this burden is not thrown on them, but they may prescribe the mode, the manner, and the place, where they will deliver the goods, and those, who are acquainted with their rules and regulations in this particular, must abide by the consequences. In the case of *Garside* v. *Proprietors of the Trent & Mersey Nav. Co.*, 4 T. R. 580, it was determined that the duty of the defendants, as carriers, ceased when the goods were landed at Manchester, although they were put into the warehouse of the defendants, and were there consumed by an accidental fire.

The duty of the carrier commences when the goods are delivered to him, and it is conceded that a personal delivery is not required. He may give notice where he will receive goods,—at what place they may be deposited,—and his usage and custom in this particular, it has never been doubted, is sufficient to charge him with the reception, and the commencement of his risk. His usage, as well as the usage of business, is to be received as competent and proper evidence to show when the goods are to be considered as coming into his custody. I can see no good reason why the same evidence should not

be received to show the time of his undertaking, the place where, or the persons to whom, he contracts to deliver goods, intrusted to his care. And if the person who employs the carrier knows of this, he cannot contend that the undertaking of the carrier was more extensive. I apprehend it will be found on an examination of the authorities, that, when connecting lines are employed in the transportation of goods, and when the employment of wharfingers, or receivers, as independent carriers is requisite in order to forward goods &c. to their ultimate destination, the liability of the first carrier, will depend entirely on the fact, whether by the contract, the wharfingers &c. are to be considered as his agents, and subsidiary to his undertaking. But when it is understood by the contracting parties, that he is to deliver them to another, or at a place certain, the duty of the carrier terminates at that particular place; and the responsibility ceases on the delivery, at that place, to, and the receipt by, any person authorized there to receive them.

The first case, which has a direct bearing on the case before us, is *Garside* v. *Proprietors of the Trent & Mersey Nav. Co.*, 4 T. R. 581, where the defendants were carriers from Stourport to Manchester. Goods of the plaintiff were forwarded from Stourport, directed to Stockport, beyond Manchester, by the defendants; they landed them at Manchester, and put them into their own warehouse, where they were destroyed; and, inasmuch as it appeared that, according to the *usage of business*, it was usual thus to deposit them, when there was no carrier from Stockport to receive them, the defendants were held not to be liable, as the goods, at the time of the fire, were in their custody as warehousemen. Now it is to be observed, in this case, that the goods were destined to a place beyond Manchester,—that the defendants, as carriers, received them without direction, and, moreover, that they had agreed to forward them to Stockport by the first carrier that should arrive. The authority of this case is recognized by Judge Story in his treatise on bailments, p. 343, and was also recognized in the case of *Hyde* against the same defendants, 5 T. R. 389, although a majority of the judges thought it to be the duty of a carrier to deliver goods to the persons to whom directed; but the usage of trade and business, as modifying the undertaking and regulating the place of

delivery, was recognized. In the case of *Warden* v. *Mourillyan*, 1 Esp. 693, Lord Kenyon, instead of considering the duty of carriers, to deliver to the persons to whom directed, as absolute, and unqualified, left it to the jury to say what was the custom. In the case of *Catley et al.* v. *Wintringham*, Peake's Cas. 150, evidence of custom was received, to ascertain whether goods had been actually delivered, or not. The case of *In re Webb*, 8 Taunt. 443, recognized that the duty of carriers may, by contract, be suspended, and they become warehouse men, between the time of the reception of goods, and their delivery at the place of their ultimate destination.

The case of *Gibson* v. *Culver & Brown*, 17 Wend. 305, is more immediately applicable to the present, as it seems to be similar in many respects. It was considered in that case, that it was competent for the defendants, who were the owners of a stage from Sand Lake to Albany, *via* Troy, and had received a box of combs, directed to Messrs Vail & Co., Troy, to show that it was the uniform usage and course of business, in which they were engaged, to leave goods at their usual stopping place, in the towns to which the goods were directed, without notice to the consignees; and that if such usage was known to the plaintiff, or if it was of so long continuance as to justify the jury in finding that it was known to the plaintiff, the carrier would be discharged. The authority of this case seems to be so decisive of the case before us, that to obviate it, the plaintiffs have to contend that it has in effect been overruled. In the case of *Holisted* v. *Nowlen*, 19 Wend. 234, and *Cole* v. *Goodwin & Story*, 19 Wend. 251, where the defendants were carriers of passengers, other points were raised and discussed, as to how far carriers could limit their common law liability, as to the *safety* of goods, by a general notice; yet the case of *Gibson* v. *Culver et al.*, was not impugned, but its authority recognized. In the case of *St. John v. Van Santvoord*, 25 Wend. 660, the same doctrine contained in the case of *Gibson* v. *Culver* was recognized and acted on. In the case of *Gould* v. *Hill*, 2 Hill 623, common usage, and a general notice is considered as evidence, and that it may be urged as a foundation for modifying the contract; and, moreover, Chancellor Kent, in his Commentaries, expressly recognized the authority of

the case of *Gibson* v. *Culver.* The principle acknowledged and established in this case is so consonant with reason and propriety, and appears to me to be so necessary, to enable persons to avail themselves of the facilities afforded by stages, steam boats, and rail road cars, to transport goods, parcels, and packages of money, and which the owners would be compelled to abandon, if they were legally liable to deliver them, at all events, to the persons to whom directed, that I should be disposed to recognize its authority, unless it had been expressly overruled, and a different principle established. But, from an examination of all the authorities, I think I may safely add to the opinion expressed in *Blin* v. *Mayo,* 10 Vt. 56, that the usage of business in the vicinity may be received to show when the liability of common carriers ceases, as well as when it commences.

It is to be observed that, from the case as presented, all we are called on to decide is, that evidence of the usage of the defendants, and that known to the president and cashier of the bank, should have been received, and I have, therefore, spoken of this knowledge as important in the case. The court, however, are not called on to decide whether this knowledge is of any importance. If the evidence had been admitted, and it had fallen short of establishing the fact of personal knowledge in the plaintiffs, I am not prepared to say the defendants would have been liable. The court below told the counsel that, although the defendants might be common carriers of ordinary goods, &c., yet it was not to be taken *prima facie* that they were carriers of packages of bank bills, like the one in dispute,—and in this they were undoubtedly correct. The same kind of evidence, then, which was used to charge them, should have been received to show how far they held themselves out as carriers by the course of their business; and if, from the course of their business, they held themselves out as carriers of goods to be delivered at the wharfs, where they stopped, or of money to be delivered to the person having the care of the wharf, or to any other person, it may be questioned whether the plaintiffs were not required to take notice of their usage in this particular, and, also, whether the very nature of the business of transporting by steamboats and rail road cars is not notice that they cannot either personally deliver to the consignees, or the persons to whom a package of money is directed,

or send word, or give notice to them of their arrival. Their stay at their stopping place is so short, that notice could not be conveyed to a person at any distance from the wharf, or place of deposit, and, unless they stipulate, either by special contract, or general usage, that they will see that goods or money are personally delivered to the person to whom directed, or will give notice to him, it may be questioned whether the consignor must not provide for the further transmission of the goods, or money, after the boats, cars, or stages arrive at their stopping place. The question, however, is not before us, and is not decided, as the case does not require it. The evidence offered, and rejected by the county court, should have been received, and their judgment is consequently reversed.