PRESIDENT, DIRECTORS AND COMPANY OF THE CONWAY BANK *vs.* AMERICAN EXPRESS COMPANY.

A bailee for hire cannot excuse himself for the want of reasonable care in the custody of property intrusted to him, simply by showing that the owner knew and acquiesced in the kind and degree of care which he exercised. And if the owner did not know all the circumstances affecting the risk to which the property was exposed, and especially if he had informed the bailee that the manner of keeping it was unsafe, the judge cannot rule, as matter of law, that the owner waived due care on the part of the bailee.

If a carrier who is in the habit of carrying large sums of money for hire, and keeping the same for several hours after its transportation, and until it is taken away by the owner, deposits money, which has been so carried, in a wooden desk, under lock and key, in his office, to which another person has access, and which is situated in a railroad station which is open to all comers, and then leaves the building for several hours in the middle of the day, with no person in charge of it, the judge cannot rule, as matter of law, in an action against the carrier for a loss of the money, that the evidence fails to show such want of care as to render him liable.

CONTRACT to recover for a failure to deliver to the plaintiffs $2600 in bank bills, which the defendants had undertaken to forward from Boston and deliver to the plaintiffs at South Deerfield.

At the trial in the superior court, before *Rockwell*, J., it appeared that the defendants were an express company, having an office at South Deerfield, which is about six miles from Conway; that they were in the habit twice a week of carrying from Boston to South Deerfield the bank bills of the plaintiffs redeemed by them in Boston, and there delivering them to the plaintiffs' cashier, or his agent, Lemuel Cross, the stage-driver from South Deerfield to Conway; that there was no stipulation as to the time when the packages of bills should be delivered to Mr. Cross, but his custom was to call for them in the afternoon, when his stage left the station for Conway; that the defendants' agent, who was also the freight agent of the Connecticut River Railroad Company, was in the habit of placing these packages, when they were not delivered to the plaintiffs' cashier in the morning, in a wooden desk in the ticket office in the railroad station; that the door of the ticket office was always locked, except when occupied by this agent and another person, one

Maynard, employed by the railroad company as his assistant, who were the only persons that had keys to the office; that the windows of the office were fastened by springs; that on the 27th of December 1862 a package of bills, containing $2600, arrived as usual at South Deerfield, at a little after nine in the forenoon; that it was locked up in the desk, as usual; that during the day the defendants' agent discovered that the desk had been forced open, and the money taken away; and that during that day the station had been left with no person in charge of it from half past ten in the forenoon till three in the afternoon. The plaintiffs introduced evidence tending to show that the money was stolen by Maynard.

It further appeared that the plaintiffs' cashier was well ac quainted with the manner in which the packages of money were kept in the desk, but never objected thereto. The plaintiffs' president testified that on one occasion, in the latter part of 1859 or the early part of 1860, he inquired of the defendants' agent where the packages of money were kept, and, upon being informed, replied that it was unsafe, without the use of an iron safe; and the agent replied that, if the defendants could run the risk, he could; and no change was made in the manner of keeping the money. It also appeared that the amount of money which the plaintiffs annually received and transmitted through the defendants' express office was from $500,000 to $750,000. Two attempts had previously been made to break into the ticket office at night. It did not appear that the plaintiffs ever knew of these attempts, or that Maynard had a key to the ticket office. The defendants' agent testified that Maynard, who was not in the employment of the defendants, was hired by himself for the railroad company; that he had occupied his position for six months; that he supposed him to be honest, and had no reason to think otherwise, until the time when the money was stolen.

The above is substantially all the evidence that was offered in relation to the manner and place of keeping the money, and its loss; and the defendants asked the court to rule that there was not sufficient evidence of a want of care on the part of the defendants, in keeping this package, to render them liable for

its loss; that if the defendants took the same care of this package that they did of other packages of money sent to the plaintiffs, and the plaintiffs knew of the degree of care exercised in keeping them, and had no reason to expect a different degree of care in this instance, and no objection to the place and manner of keeping them was made except that testified to by the plaintiffs' president, and the package was lost, the plaintiffs could not recover, even if the jury should find that ordinary care was not exercised; and that, if the jury were satisfied that Maynard forced open the desk and stole the package, the defendants were not liable.  The judge declined so to rule, and instructed the jury that they need not consider the question of a waiver by the plaintiffs of the use of ordinary care by the defendants, or the question raised concerning Maynard; that, if the plaintiffs had satisfied them affirmatively that the defendants were not in the exercise of ordinary care, then the defendants were liable; but, if the defendants were in the exercise of ordinary care, they were not liable.

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*N. A. Leonard,* for the defendants.  The liability of the defendants, at the time the package in controversy was lost, was that of warehousemen, and not of common carriers.  *Thomas* v. *Boston & Providence Railroad,* 10 Met. 472.  *Norway Plains Company* v. *Boston & Maine Railroad,* 1 Gray, 263.  The plaintiffs cannot recover for negligence which they had knowledge of and acquiesced in.  *Knowles* v. *Atlantic & St. Lawrence Railroad,* 38 Maine, 55.  *Wright* v. *Malden & Melrose Railroad,* 4 Allen, 283.  *Hunt* v. *Lowell Gas Light Co.* 1 Allen, 343.  *Holly* v. *Boston Gas Light Co.* 8 Gray, 123.  *Horton* v. *Ipswich,* 12 Cush. 492.  *Beers* v. *Housatonic Railroad,* 19 Conn. 566.  The plaintiffs were guilty of negligence in not calling for the package before it was lost; especially when they knew that the defendants had no safer place to keep it in than the one used. The jury were left to establish an arbitrary rule of ordinary care, not depending on the particular circumstances of this case, and the knowledge and approval of the plaintiffs.  Story on Bailm §§ 11--14.

*G. T. Davis,* for the plaintiffs.

BIGELOW, C. J.  We think this case was properly submitted to the jury to determine whether the defendants had exercised due care in the custody of the money which was intrusted to them.  It does not seem to have been controverted at the trial that the defendants at the time the package was lost had ceased to have it in their keeping as common carriers, and that a correct rule was adopted by the court as to the standard of care by which the conduct and diligence of the defendants were to be measured.  Certainly the instructions on this point were sufficiently favorable to the defendants.  Ordinarily the duty of common carriers is to deliver articles at the place of destination to those persons for whom they are intended, and their responsibility as carriers does not cease until such delivery has been accomplished.  But the contract of carriage may, in this respect, be essentially modified by express agreement; or by a usage or course of trade, by a particular mode of dealing between parties, by the well known and established practice of the carrier, and any other circumstances from which an intention of the parties can be clearly gathered to change the usual incidents of the contract, so as to put an end to the responsibility of the carrier as soon as the articles are transported by him to a particular terminus, and to substitute in its place the less stringent obligation of a depositary or custodian of property intrusted to him for safe keeping.  *Gibson* v. *Culver,* 17 Wend. 305.  *Farmers & Mechanics' Bank* v. *Champlain Transportation Co.* 16 Verm. 52 ; S. C. 18 Verm. 131, and 23 Verm. 186.  *Thomas* v. *Boston & Providence Railroad,* 10 Met. 472. From the evidence reported in this case, the inference is certainly a reasonable and fair one, that it was understood between the parties that the office of the carrier should be the place where the delivery of the money to the agent of the plaintiffs was to be made, and that after it was deposited there the defendants were no longer to be insurers of the property against all risks but those arising from the act of God and public enemies, but that it was there to continue in their possession until taken away by the plaintiffs' agent, as bailees responsible only

for due and reasonable care in its custody and safe keeping. Such being the theory on which the case was tried by both parties, we have only to consider whether there was any error made by the court in its application to the facts in proof. In this aspect, the objections urged by the defendants resolve themselves into two.

1. The first is, that the evidence shows that the plaintiffs knew the place where the money was deposited and the mode in which it was kept and secured by the defendants, and that the jury should have been instructed that no action would lie to recover damages for the alleged negligence, because the plaintiffs assented to and acquiesced in the degree and kind of care which was adopted by the defendants in the custody of the money. We are not prepared to adopt, as a rule of law applicable to the responsibility of parties, the doctrine for which the counsel for the defendants contends. Mere knowledge of the mode in which a depositary receives and takes care of property intrusted to him will not operate to absolve him from all liability to those who employ him with such knowledge, for a want of due care in the keeping of their property. Such knowledge, accompanied by evidence of long acquiescence without objection by an employer, might be evidence of an agreement as to the nature and degree of care which was to be used by the bailee. But beyond this, it would not be safe to go. A person might be willing to intrust his property to a carrier as warehouseman, intending to rely solely on his personal responsibility for its safety, irrespective of the particular mode adopted for its transportation and custody. Something more than silence and acquiescence would be necessary to absolve a party from the proper measure of responsibility which attaches to the business or calling which he assumes to carry on. Parties may change, modify or waive the legal incidents of a contract by agreement, express or clearly implied; but if there is no sufficient evidence of such agreement, the contract must take effect according to the rules of law applicable to it. Upon the statement of the evidence contained in these exceptions, it appears to us that it was wholly insufficient to warrant the instruction for which the

defendants asked. It fell far short of proving any waiver by the plaintiffs of the use of due care by the defendants in the custody of the money. To give effect to such waiver, it would be necessary to show a full knowledge by the plaintiffs of all the material facts and circumstances in relation to the manner in which the money was kept, and the risks to which it was exposed. Of these, there were several of which it does not appear that the plaintiffs had any knowledge whatever ; especially it does not appear that they knew that the building in which the money was kept was left for several hours each day without any person to take charge of it, although during this time it was open to all comers ; or that a person not in the employment of the defendants had free access, by means of a duplicate key, to the office in which the desk containing the money was kept ; or that previous attempts had been made to break into the building by robbers at night. But, in addition to this ignorance of essential facts, it affirmatively appears that the plaintiffs through their president had distinctly informed the agent of the defendants that the place in which the money was kept was unsafe. In this state of the proof, it is difficult to see any ground on which a jury would be warranted in finding either a waiver by the plaintiffs of due care and diligence on the part of the defendants in the custody of the money, or any assent to the manner in which it was actually kept during the time it remained in their possession.

2. The facts already adverted to are decisive of the other exception taken by the defendants, that the court erred in refusing to rule that the evidence was insufficient to show a want of due care, or such negligence as to render them liable in this action. It certainly cannot be said that there was not a scintilla of proof of an omission to use that prudence and discretion which were adapted to the business which they undertook to perform for an adequate compensation. *Exceptions overruled.*