By the Court,
Robertson, Ch. J.
The first question presented'in this action is whether the plaintiffs performed their contract for the delivery of the cargo in question,- according to general rules of law regulating such delivery. If they did they were entitled to recover. If they did not, a further investigation may become necessary, to ascertain if the peculiar facts of the case warrant a deviation from such general rules, by admitting a delivery out of the ordinary mode.
By the terms of the bill of lading the merchandise was deliverable at Alexandria to the defendants or their assigns. Mr. Oliphant being recognized as the agent to receive it. By the assignment of the bill of lading to him, he became entitled to receive it, either in his own right, or as consignee. *498 It was actually delivered to a quarter-master of the United States army (Captain Stoddard) for the • use of whom it was ultimately designed, without any direct • authority, for that purpose, from the owners or consignee, and principally during the absence of such consignee.
The delivery of merchandise by its carriers, at the end of the route or voyage, seems to be governed by different rules, according to the nature of the transportation. If it comes from a foreign country, it seems to be sufficient that it should be landed, when, where and how the custom of the port, at. which it arrives, prescribes (Abb. on Ship. 463, 5th Am. ed. Hyde v. Trent Nav. Co., 5 T. R. 389, per Buller, J.) when such custom has been so long acquiesced in, as to be supposed to form part of the contract. (Rushforth v. Hadfield, 6 East, 519, per Ld. Ellenborough and Grose, J.) If in the United States, generally by landing it at the usual place and giving notice to the consignee, (Story on Bailm. § 545. 2 Kent’s Com. 604. Chichering v. Fowler, 4 Pick. 371,) although even that does not seem to be the universal rule. (Hemphill v. Chenie, 6 Watts & S. 62. Galloway v. Hughes, 1 Bailey, S. C. 553. Blin v. Mayo, 10 Verm. Rep. 56.) Such notice, when permitted to take the place of actual delivery, must be a reasonable one. (Packard v. Getman, 6 Cowen, 757. Quiggin v. Duff, 1 Mees. & Welsh. 174. Warded, v. Mourillyan, 2 Esp. 693. Cope v. Cordova, 1 Rawle, 203. Scholes v. Ackerland, 11 Ill. R. 474. Crawford v. Clark, 15 id. 561,) and its publication in a newspaper is not sufficient. (Packard v. Brodier, 2 Kent’s Com. 605, 5th ed. n. p.) But it may be entirely dispensed, with by a custom of the port, (Gibson v. Culver, 17 Wend. 305. Farmers and Mechanics’ Bank v. Champlain Transportation Co., 16 Verm. Rep. 52,) which is also controlling in regard to the place of delivery. (Gatliffe v. Bourne, 4 Bing. N. R. 314. Chichering v. Fowler, ubi sup.) Although such landing and notice may be a substitute for actual delivery to a consignee, they will not justify the abandonment of the goods, or their delivery to a stranger, (Ostrander v. Brown, 15 John. 39,) at least until after the *499 allowance of a reasonable time to the consignee to remove them. (Price v. Powell, 3 N. Y. Rep. 322.) Generally a carrier of goods from abroad is bound to retain them under his care, (Id.) unless the rule, which prevails in regard to goods transported through the same country, when a consignor is absent, dead or refuses to receive them, (but only in such cases, (Humphreys v. Reed, 6 Wheat. 435,) of entrusting them to a responsible warehouseman as bailee of the consignor, (Fisk v. Newton, 1 Denio, 46. Gibson v. Culver, 17 Wend. 305,) is to be extended to imported goods. The only excuse for not delivering or landing goods, seems to be the exercise of superior lawful authority preventing it. (Evans v. Hutton, 5 Scott, N. R. 670.) But in the case of merchandise transported through the same country, the legality of such authority must be proved. (Id.) Similar rules, however, do not govern domestic transportation or on the great inland lakes or coasting trade of this country. The rule in regard to domestic carriers is, that goods transported by them must be delivered to the consignee, and until so delivered remain at the risk of the carrier as such, (Storr v. Crowley, 1 McClel. & T. 136; Stephenson v. Hart, 4 Bing. 476; Garnett v. Willan, 5 B. & Ald. 53; Bodenham v. Bennett, 4 Paine, 34. Duff v. Budd, 3 Brod. & B. 177; Birkett v. Willan, 2 Barn. & Ald. 356; Gibson v Culver, 17 Wend. 305,) except that he may notify the consignees of their arrival, and in case of refusal to take them, store them for their benefit. (Gibson v. Culver, Fisk v. Newton, ubi sup.) A delivery even to a porter of an inn, for a lodger, not being considered sufficient. (Hyde v. Trent Nav. Co. ubi sup. per Buller, Ashhurst and Grose, JJ. Ld. Kenyon contra.)
In this case the plaintiffs did not comply with any of such ordinary rules for the delivery of goods, except landing the cargo at a wharf, where similar articles for the use of the government were landed. The master of the vessel was even informed that the consignee was frequently at the quartermaster’s office and had been there not long previously, and he finally saw him. If the plaintiffs therefore performed their *500 part of t]he contract so as to entitle them to compensation, it must be by being legally excused from following such general rules for the delivery of merchandise.
Ho authority seems to have been given in this case to the master of the vessel to deliver the cargo in question to the government generally, so as to leave it to decide, to what contract they would apply it, or empowering him to determine, upon what contract the cargo should so be delivered to the officers of the United States government, whether upon that made in the name of Charles T. Baldwin, or that in the name of J. H. Oliphant, Whether the same parties were interested in both contracts or not, they had a right to determine for themselves, on which one they would deliver the cargo in question or to refuse to deliver it at all, unless it was accepted on that, in performance of which, they tendered it. I do not perceive that the plaintiffs or the master had any thing to do with any intended omission to comply with one contract, because it was less profitable than the other. That was a matter resting entirely with the parties interested.
I do not see how the obtaining of a certificate from the Major Quarter Master at Hew York, (Van Vliet,) that the cargo in question was “contract oats,” upon which a clearance was obtained at that port, at all affects the question of delivery. Even if it did so, there was nothing to prevent the consignee from receiving the cargo, so as to enable him to elect on ivhat contract he would deliver them. If the master of the vessel, (Lingo,) who is one of the plaintiffs, in order to obtain a clearance, made any oath, as to the cargo being government stores or a government cargo, inconsistent with any right of the owners or consignees under the bill of lading, it was the act of the plaintiffs and their agent, and could not confer any new authority on them, to deliver the cargo directly to the government instead of the consignees, or deprive the defendant of any right. The only intervention of' any one on behalf of the defendant, to procure the clearance, seems to have been that of their clerk, (Walters,) who, (as the clerk of the agent of the plaintiffs, Mills, testifies,) told the deputy collector of *501 the port, (Embree,) either that it was a government cargo, or intended for the government. Which of course was true, whether Oliphant did "not or did give to the defendants the orders which he stated he gave for its purchase, or the defendants bought it or not on such orders, as they testify they did. It might have been applied on the more favorable contract, if the plaintiffs’ agent had not prevented such application by placing it generally in the hands of officers of the government without such application, and thus preventing the defendant or Oliphant from delivering it to the particular officer, (Ool. Rucker,) with whom the last contract was made. The possible acknowledgment by government of a liability under the second contract, or any liability of its officers for a conversion of the cargo without the consent of the owners or consignees, does not absolve the plaintiffs from liability for not delivering according to the contract. At all events, they cannot recover freight for goods not delivered according to such contract.
Nor am I able to understand, how the question is at all affected either by the agency of Oliphant for O. T. Baldwin or his stating to a clerk of the quarter-master at Alexandria, (Cary,) that the cargo in question was intended to be applied to Baldwin’s contract. For to the quarter-master, (Stoddard,) he only made the general declaration, that oats were being shipped to fill up such prior contracts, which it seems they were, until the defendants changed the purpose of the shipment by turning the cargo over to Oliphant, to enable him to fulfill his contract. The party to whom the plaintiffs thus agreed to deliver the oats was entitled to their possession, to do with them what he thought proper, whatever his statement of his intention may have been. .
I have not therefore found any materials in this case, from which to spell out a contract by the defendant with the plaintiffs, to permit the latter to perform their contract to deliver the cargo in question to the former or their assigns or Oliphant, by delivering it to a quarter-master at Alexandria, for the benefit of the government, to .be applied on the C. T. Baldwin *502 contract, or any other they thought proper, to which they had a right to apply it. If the master could not have landed his cargo therefore upon any other condition, it was his duty to have returned to the port of departure with it. There was, therefore, no such delivery as entitles the plaintiffs to recover any freight.
Hone of the exceptions to evidence were well taken. The question put to Oliphant, whether the oats were ever delivered to him, was not one of law, hut of fact, and so he understood and answered it. If it was intended tó call for the witness's interpretation of the legal meaning of “ delivery,” it was not answered. A direction for a telegraphic dispatch at the place from whence it is sent, is not a written instrument, any more than a written memorandum of any message to be delivered orally, or re-written by the messenger. That in ■ question was merely one step in a process, by which an order for the purchase of oats was delivered to the defendants. The loss of the telegram received in pursuance thereof, by the defendant Baldwin, was proved by him. If such direction is to be considered as identical with the memorandum furnished at the opposite end of the electric wire, the defect was therefore cured. I do not see why the defendants were not at liberty to prove, that Oliphant so little regarded his agency for C. T. Baldwin, as to have done no act under his appointment . as such except borrowing bags for him, if that were such ; so as to repel any. presumption of acting as such agent in ordering or selling the cargo in question. There was no contradiction in that to what he had already testified. The purpose for which the defendant made the transfer of the cargo in question by the indorsement on the bill of lading, was material to repel any inference which the plaintiffs struggled to furnish materials for making, that the oats were intended to be delivered in satisfaction of the “O. T. Baldwin” contract. Whether such purpose was merely a matter of conjecture of the witness, or was a part of some understanding between the parties, did not appear ; it might equally well have been the latter. The objection was not put upon that ground, so as to *503 enable the counsel to remould his question, and was, therefore, properly overruled. No effort was even made on cross-examination, to ascertain how the witness knew what the purpose was. The question put to the quarter-master at Alexandria, whether' there was any other contract at Alexandria with O. T. Baldwin, except that on which he applied the cargo, was entirely immaterial, as no direction had been given to apply the cargo to any such contract. It would, besides, be a question of law, after proof of the existence and contents of such contract, whether such a cargo could be applied on them or not.
The copy of the letter of the witness, Stoddard, set out as his answer to a question, calling upon him to annex letters to him - and his answers thereto, was properly excluded, as the original was not produced to the commissioner on his examination. The witness did not furnish the original letter of' which it purported to be a copy, and which he was called- upon to annex, so that he left thereby the correspondence incomplete. He testified, also, that he had not compared the copy with the origina], and the defendants were not bound to rely on his recollection of the contents.
The ship-broker, through whom the chartering of the vessel in question was negotiated, was the proper person for the clerk of the defendants, (Walters,) to apply to, in reference to any delay. He had reported her as in a fit condition for loading, and the defendants found she was not. There was no evidence that his duties as mutual agent of the parties had ended. No other contract had yet been signed, and the bill of lading was not, until the cargo was on board. The whole conversation, whose admission is complained of, consisted of his informing the defendant that the ship had not discharged her cargo, but would be ready next day, and the objection seems not to have been taken until after it was introduced.
It is to be presumed that the referee found against any facts which tended to establish the performance by the plaintiffs of their contract, or any excuse for non-performance which the evidence justified. He found, however, that the plaintiffs did *504 not deliver the cargo in question, as required hy the hill of lading, either to the defendants or Oliphant, at Alexandria or elsewhere, which fully sustains the judgment. And there being no errors either in the rules of law applied, or the admission or rejection of evidence, the judgment must he affirmed, with costs.