## Illinois Central Railroad Company v. John W. Carter.

1. COMMON CARRIERS—*Liability for Non-compliance with Contract.*—A consignor of freight directed the carrier to forward a portion of it to the consignor, to places designated by a third party; instead of doing

this, the carrier delivered it to such third person, who wrongfully converted it and disappeared.   The carrier was held liable.

2.   SAME—*Must Obey Instructions, Even When a Volunteer.*—When a common carrier is not bound to act in a matter relating to the delivery of goods, in accordance with instructions received from the consignor, if he does act, he will be liable for any loss which may occur by reason of his not obeying such instructions.

3.   SAME—*When Notice Must be Given.*—Under the common law, a carrier by water is bound to give notice of the arrival of goods.

4.   SAME—*When Relieved from Giving Notice.*—The giving of notice of the arrival of goods may be waived by contract, and also by the previous course of dealings between the parties, or the uniform custom of the port.

5.   CORPORATIONS—*Act by Agents.*—A corporation can only act by its agents, the acts of which, within the scope of their apparent authority, are the acts of the corporation.

**Assumpsit.**—Against a common carrier.   Appeal from the Superior Court of Cook County; the Hon. GEORGE F. BLANKE, Judge, presiding. Heard in this court at the October term, 1895.   Affirmed.   Opinion filed February 11, 1896.

C. V. GWIN, attorney for appellant; JAMES FENTRESS, of counsel.

BAKER & GREELEY, attorneys for appellee.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

June 17, 1891, the appellee delivered to the appellant 1,000 boxes of ink, consigned to himself, by a name in which he conducted business at St. Paul, Minnesota.

Thereby the appellant became liable to deliver the property at St. Paul.   C. & N. W. Ry. v. Simon, 57 Ill. App. 502. It did carry the property there, and, June 27, 1891; placed it in a suitable warehouse of a steamboat company, a connecting line, which had carried the goods the last part of the route.   M. J. Williams was the "General North Western Agent" of the appellant—so styled on letter-heads supplied by the appellant.   The appellee had no notice of what his actual authority from the appellant might be.

Before any of the goods had been delivered out of the

warehouse the appellee sent the bill of lading to Williams, inclosed in a letter from the appellee as follows:

"7—6, '91.

R. J. Williams, Esq., Agent Ill. Cen. R. R., St. Paul, Minn.

Dear Sir: Please find enclosed b—l for 1,000 boxes of ink to be delivered from time to time to C. S. Eaton and F. H. Jackson in accordance with our telegraphic or written instructions."

The bill of lading so sent was indorsed "Deliver to C. S. Eaton or to Fred H. Jackson, as per our telegraphic or written instructions." Both the letter and indorsement were signed with the business name of the appellee.

No instructions had as yet been given, so that instructions to be thereafter given were meant. On a telegraphic order from the appellee to Williams, which the latter transmitted to the agent of the steamboat company, 330 boxes were properly delivered July 9, 1891. July 14, 1891, the delivery was made which has given rise to this suit. The appellee telegraphed as follows:

"R. J. Williams, F. A., Freight Agent Illinois Central R. R., St. Paul, Minn.

Release hundred boxes to Chas. S. Eaton and hundred to Fred. H. Jackson. Forward two hundred consigned to us to places designated by them."

Williams transmitted the order to the agent of the steamboat company, and that agent delivered the whole 400 boxes to Eaton and Jackson, who, as well as the boxes, are unaccounted for.

It is fairly inferable that the appellee had no notice where, or in what custody, in St. Paul, his property was. Union Steamboat Co. v. Knapp, 73 Ill. 506.

If it be admitted that Williams might, instead of doing anything about the deliveries, have paid no attention to the dispatches, or answered that the property was in the steamboat company's warehouse, to which instructions should be sent, the answer is that the appellee had no notice of any change in the custody of the property, nor of any limitation upon the authority of Williams, and therefore, as to the

appellee, whatever Williams did as to the property was the act of the appellant. Had the appellant, under the circumstances, been an individual carrier, and, receiving the instructions for deliveries and undertaking to comply with the instructions, had intrusted the execution of them to the warehouseman, who made wrong deliveries, it would seem that his liability could hardly be questioned.

As the appellant can act only through agents, the acts of such agents within the scope of their apparent authority, are the acts of the appellant. Had the appellant not meddled with the deliveries, it may be that it would not have been liable; but having meddled, it must abide the consequence, which is the loss of two hundred boxes carried off by Eaton and Jackson, instead of being consigned to the appellee, as he directed. This wrong delivery is a breach of the contract declared upon and implied in the bill of lading, to deliver to the order of the appellee.

The judgment is affirmed.

Mr. Justice Waterman.

In my judgment, the decision of this case rests upon the question of whether the deposit of the goods in the warehouse of the Diamond Joe Line terminated the contract of the Illinois Central Railway Company. The solution of this question depends upon whether the railway company was bound to give or to see that notice was given the consignee of the arrival of the goods. As the goods were to be delivered in St. Paul, the delivery was to be in accordance with the law of the State of Minnesota. In the absence of evidence as to this, it is to be presumed that the common law existed there.

Under the common law a carrier by water is bound to give notice of the arrival of the goods. Hutchinson on Carriers, Sec. 365 *et seq*.

The giving of notice may be waived by the previous course of dealing between the parties. The carrier may also be relieved from the necessity of giving notice by showing that the uniform usage and course of business of carriers in

the same trade at the port where the goods were left, was to leave the same without notice to the consignee; and that he, the carrier, acted in accordance with such usage. Hutchinson on Carriers, Sec. 366; Dixon v. Dunham, 14 Ill. 324; Farmers & Mechanics Bank v. Champlain Transportation Co., 12 Vt. 131; 16 Vt. 52; 23 Vt. 186; Devato v. Plumbago, 20 Fed. Rep. 510.

The necessity for notice may also be waived by contract. Hutchinson on Carriers, Sec. 366 a.

It does not appear that there was either course of dealing with the appellee, usage at the port of St. Paul, or contract between the parties that relieved the appellant from its common law obligation to give notice to the consignee of the arrival of the goods.